FILED
 2010 May-21 PM 02:55
U.S. DISTRICT COURT
   N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **CHRISTOPHER SPIVEY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| vs. } | **CASE NO. 6:10-cv-0041-SLB** |
| } | |
| **ALLSTATE INDEMNITY** } | |
| **COMPANY; JAMES RUSSELL** } | |
| **DUGGAR,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on defendants' Motion to Dismiss James Russell Duggar. (Doc. 5.)[1] Plaintiff Christopher Spivey ("Spivey") brought suit against the defendants, Allstate Indemnity Company ("Allstate") and James R. Duggar ("Duggar"), in the Circuit Court of Walker County, Alabama, alleging breach of contract; bad faith failure to pay; unjust enrichment; negligence and/or wantonness; negligent hiring, training and supervision; and negligent or wanton procurement. (Doc. 1, Ex. A.) Defendants removed the case to this court, on the ground that this court has subject-matter jurisdiction based upon complete diversity of the parties, (doc. 1), and have now moved for entry of an order dismissing all claims against defendant Duggar, (doc. 5).

Also before the court is plaintiff's Response in Opposition to Defendants' Motion

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

to Dismiss and Motion to Remand with Supporting Memorandum. (Doc. 11.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant Duggar, is due to be dismissed as fraudulently joined, and plaintiff's Motion to Remand, (doc. 11), is due to be denied. Accordingly, Defendants' Motion to Dismiss defendant Duggar, (doc. 5), will be granted.

## I. MOTION TO REMAND

### A. Legal Standard

Pursuant to 28 U.S.C. § 1441(a) (1994), "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Accordingly, "when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). When, as here, the jurisdictional question is whether there is diversity of citizenship between the parties, "federal diversity jurisdiction under 28 U.S.C. § 1332 requires 'complete diversity'–the citizenship of every plaintiff must be diverse from the citizenship of every defendant." *Legg v. Wyeth*, 428 F.3d 1317, 1321 n.2 (11th Cir. 2005). "If there is jurisdiction, then removal is appropriate and the court may proceed to the merits of the case." *Am. Tobacco*, 168 F.3d at 410.

On the other hand, remand is mandatory when jurisdiction has not been

established.  28 U.S.C. § 1447(c); *Am. Tobacco*, 168 F.3d at 410 (citing *Int'l Primate Prot. League v. Admin'rs of Tulane Educ. Fund,* 500 U.S. 72, 87-89 (1991)).  Moreover, a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court. *Am. Tobacco*, 168 F.3d at 410.  Ruling on a motion to remand, therefore, necessarily precedes ruling on a motion to dismiss.  *See, e. g., Nichols v. S.E. Health Plan of Ala., Inc.,* 859 F. Supp. 553, 559 (S.D. Ala.1993)

    Where jurisdiction is based upon diversity, a non-diverse defendant who is fraudulently joined does not defeat diversity because his citizenship is excluded from the diversity calculus. *Kimbrough v. Dial,* No. 06-0585-WS-C, 2006 WL 3627102 at *2 (S.D. Ala. 2006)  "[F]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998).  "In a removal case alleging fraudulent joinder, the removing party has the burden of proving either: (1) there is no possibility the plaintiff can establish a cause of action against a resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)).  The removing party's burden is a heavy one.  *Id*. (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)).

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322 (alteration omitted).  The court thus resolves claims of fraudulent joinder in a manner similar to evaluating summary judgment motions, requiring that all factual disputes be resolved in favor of the plaintiff. *Id*. at 1322-23. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, [the court] must find that joinder was proper and remand the case to state court." *Crowe*, 113 F.3d at 1538 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993)) (quotation omitted).

**B.   Discussion**

Plaintiff's Complaint alleges that, on or about April 21, 2008, defendant Duggar procured, from defendant Allstate, a policy of insurance for Spivey's manufactured home, located in Jasper, Alabama.  (Doc. 1, Ex. A at ¶¶ 3-4, Complaint.)  The insurance policy obligated Allstate to provide coverage on Spivey's property in the event of a covered loss. (*Id.*)

On May 8, 2008, portions of plaintiff's home, and much of his personal property located within the home, were damaged or completely destroyed by fire.  (*Id.* at ¶ 5.) Pursuant to the provisions of the policy, plaintiff notified Allstate, and filed a claim for

the loss. (*Id.* at ¶ 6.) On November 11, 2008, Allstate denied plaintiff's claim. (*Id.* at ¶ 8.) Plaintiff filed his Complaint in state court alleging that Allstate had failed to pay his claim of damage caused by the fire, a covered peril. (*Id.* at ¶ 9.) Plaintiff also sued Duggar, alleging that Duggar negligently or wantonly procured insurance to cover plaintiff's loss. (*Id.* at ¶ 14.)

In his motion to remand, Spivey contends that Allstate denied his fire-loss claim, at least in part, because of incorrect information on Spivey's application for insurance. (Doc. 11, p. 16.) Spivey attributes the errors contained in his application to the actions of Mr. Holiday, the agent employed by Duggar's Office, and contends that Mr. Holiday improperly filled out the application for Spivey and submitted it to Allstate. (Doc. 11, p. 15.)

In an examination under oath, conducted by Allstate, Spivey explained that his girlfriend at the time, Deondra Bryant ("Bryant") completed the application for him while he remained at work. (Doc. 11-5, Ex. C, pp. 20, 89.) Bryant, likewise, stated under oath that she went to Duggar's office, and met with Mr. Holiday, to complete the application and pay the initial premium. (Doc. 11-2, Ex. B, pp. 20, 22.) Mr. Holiday read the application questions to Bryant and recorded her answers on his laptop. (*Id.*, p. 22.) When asked about marital status, Bryant responded that she and Spivey lived together. (*Id.*, p.24.) Mr. Holiday inquired about Spivey's claims history, within the three years prior to the date of the application; Bryant called Spivey to get the answer and related that

5

Spivey believed that it had been over three years since he filed his last claim.[2]  (*Id.*, p. 26; Doc. 11-5, ex. C, p. 92.)  At the conclusion of the application interview, Mr. Holiday printed only the signature page and obtained Bryant's signature; Bryant was not afforded the opportunity to review the application, and is unsure whether she was provided with a copy of the completed application.  (Doc. 11-2, Ex. B, pp. 21-22.)  Mr. Holiday accepted the premium payment and informed Bryant that the policy would arrive by mail.  (*Id.*, p. 20.)

On November 11, 2008, six months after the May 8, 2008 fire, Allstate sent Spivey a reservation of rights letter, which stated, in pertinent part:

> (1) The fire was incendiary in origin . . . ; and,
>
> (2) Misrepresentations and/or concealments of material facts made to Allstate *after the loss* voided the insurance contract pursuant to Code of Alabama § 27-14-28 and breached the Concealment and Fraud provision of the insurance contract, resulting in no coverage for this claim.
>
> Based upon these and other reasons, whether known or unknown at this time, we must decline coverage for your claim . . . .

(Doc. 11-10, Ex. F [emphasis added].)  Notwithstanding the letter, Spivey points out that twice during his examination under oath, Allstate's attorney stated that the reservation of rights was based upon:

---

[2]  In fact, Spivey had filed a claim for theft in the amount of $ 807, on July 1, 2005.  (Doc. 1, Ex. D.)  Upon discovery of this claim, which was made within the three year period preceding the April 24, 2008 application, Allstate issued a Notice of Cancellation letter, informing Spivey that it was not able to issue the policy that he had applied for, and that the coverage would remain in effect until 12:01 a.m. on May 10, 2008.  (*Id.*)

> "misrepresentations that were made *during the application*. There are a lot of things on the application that are incorrect from information we've learned since the fire happened, so the purpose of the examination under oath in part is to get information from you that would explain why these things are as they are."

(Doc. 11-5, Ex. C, p. 160 [emphasis added]; *see* Doc. 11-4, Ex. C, p. 6.)

It is undisputed that the application contained the following errors: 1) Bryant's first name was misspelled, 2) Bryant and Spivey are listed as "married," and 3) Spivey is reported not to have made any insurance claims in the *five* years preceding the April 2008 application. (Doc. 11-9, Ex. E; *see* Doc. 11, p. 6.) In sum, Spivey argues that, because of Duggar's conduct in completing the application, Spivey "never had the benefit of the homeowner's coverage." (Doc. 11, p.17.) Spivey contends that he has stated a valid claim for negligent or wanton procurement of insurance, and that defendant has not met the heavy burden of demonstrating that there is no possibility that Spivey can recover against Duggar. (*Id.*, p. 18.) The court disagrees.

"When an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom." *Lewis v. Roberts*, 630 So. 2d 355, 357 (Ala. 1993). "In Alabama, when an insurance broker fails in the duties he assumes, one can sue him either for breach of contract or in tort." *First Alabama Bank v. First State Insurance Co.*, 899 F.2d 1045, 1067 (11th Cir. 1990)(internal citations omitted). In this case, the court finds that Duggar bound coverage for Spivey and that coverage was in force at the

time of the fire.  (Doc. 11-8, Ex. D; Doc. 11-9, Ex. E, p. 8.)  The court also finds that Allstate ultimately denied the fire-loss claim because it determined that the fire was a set fire, and there were misrepresentations made in the proof of loss.  (Doc. 13, p. 4; Doc. 1, Ex. E.)  The misrepresentations contained in the application were material to Allstate's decision to cancel the policy, effective May 10, 2008, two days after the fire; however, they were not material to Allstate's determination regarding the claim for fire-loss.  (Doc. 1, Ex. D.)  While Allstate questioned Spivey, under oath, regarding the "misrepresentations that were made during the application,"[3] Allstate does not contend that representations made in the application process voided coverage; rather, it states it denied plaintiff's fire-loss claim because it determined the fire was intentionally set and because of misrepresentations of material fact made *after* the loss.  (Doc. 13, p. 3.)  Although Spivey contends that Allstate "[p]resumably, will argue Mr. Spivey's misrepresentations, concealments, or fraud regarding his 2005 theft claim and his marriage to Ms. Bryant voided the coverage and gave a legitimate basis for denying Mr. Spivey's post-fire claim," Allstate does not make this argument.  (*See id.*)

     Because the court finds that there is no possibility that a state court would find that Duggar negligently or wantonly failed to procure insurance for Spivey, the court finds that Duggar was fraudulently joined and plaintiff's Motion to Remand is due to be denied.

---

[3] *See supra* p. 7.

## II.   MOTION TO DISMISS

Defendants' moved to dismiss Duggar on the grounds that the complaint fails to state a cause action upon which relief can be granted. (Doc. 5.) Because the court finds that plaintiff fraudulently joined Duggar to the action, the sole count against Duggar for negligent or wanton procurement, must be dismissed. *Florence v. Crescent Res., LLC,* 484 F.3d 1293, 1297 (11th Cir. 2007) (requiring that, upon a finding of fraudulent joinder, "federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court"). Defendants' Motion to Dismiss James Russell Duggar is due to be granted.

## III.   CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiffs' Motion to Remand, (doc. 11), is due to be denied. Defendant's Motion to Dismiss James Russell Duggar, (doc. 5), is due to be granted as to all claims. An order will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 21st day of May, 2010.

_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE